# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **FREDA COEBURN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00023 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Freda Coeburn, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq.* (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

-1-

than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Coeburn filed her application for SSI on or about October 7, 2003, alleging disability as of April 1, 1995, based on hypertension, nerves, headaches, arthritis, back and knee pain, high cholesterol, stomach problems, limited reading ability, anxiety and depression. (Record, ("R."), at 44-48, 52, 62.) The claim was denied initially and upon reconsideration. (R. at 27-29, 32, 34-36.) Coeburn then requested a hearing before an administrative law judge, ("ALJ"). (R. at 37.) The ALJ held a hearing on February 3, 2005, at which Coeburn was represented by counsel. (R. at 175-200.)

By decision dated March 22, 2005, the ALJ denied Coeburn's claim. (R. at 11-19.) The ALJ found that Coeburn had not engaged in substantial gainful activity since April 1, 1995. (R. at 18.) The ALJ also found that the medical evidence established that Coeburn suffered from a severe impairment, namely arthritis, but he found that Coeburn did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 18.) The ALJ found that Coeburn's allegations were not totally credible. (R. at 18.) The ALJ found that Coeburn retained the residual functional capacity to perform medium work[1] that required only occasional climbing, balancing, stooping, kneeling,

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work,

crouching and crawling. (R. at 18.) The ALJ found that Coeburn had no past relevant work. (R. at 18.) Based on Coeburn's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Coeburn could perform jobs existing in significant numbers in the national economy. (R. at 18.) Thus, the ALJ found that Coeburn was not disabled under the Act and was not eligible for benefits. (R. at 18-19.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his decision, Coeburn pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 4-6.) Coeburn then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on the Commissioner's motion for summary judgment filed November 17, 2005.

## *II. Facts*

Coeburn was born in 1953, (R. at 46), which classifies her as a person closely approaching advanced age under 20 C.F.R. § 416.963(d) (2005). Coeburn has a high school education and no past relevant work experience. (R. at 53, 58.) Coeburn testified that she was disabled due to back and leg pain and that she did not like to be around crowds. (R. at 184-85.)

Donna Bardsley, a vocational expert, also testified at Coeburn's hearing. (R. at 193-99.) Bardsley was asked to consider an individual of Coeburn's age, education

---

she also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2005).

-3-

and work experience, who had the residual functional capacity as indicated in the assessment of Dr. Richard M. Surrusco, M.D., a state agency physician, dated May 3, 2004. (R. at 136-43, 195.) Bardsley stated that the limitations posed by Dr. Surrusco placed Coeburn in the medium category and that there were jobs available that such an individual could perform, including those of a sales clerk, a cashier, food service related occupations, a cleaner, a hand packager, a sorter, an assembler and an inspector. (R. at 195.) Bardsley was asked to consider the same individual, but who also was limited as indicated by the assessment completed by Eugenie Hamilton, Ph.D., a state agency psychologist, on March 3, 2004. (R. at 144-46, 196.) Bardsley stated that such limitations would eliminate the jobs of cashier and sales clerk and half the jobs in the food service occupations. (R. at 196.) She stated that the Psychiatric Review Technique form, ("PRTF"), completed by Hamilton would not affect her answer in relation to hypothetical question number two. (R. at 197.)

In rendering his decision, the ALJ reviewed medical records from B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Jai K. Varandani, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Eugenie Hamilton, Ph.D., a state agency psychologist; and Dr. Kevin Blackwell, D.O.

The record shows that Dr. Jai K. Varandani, M.D., treated Coeburn from March 2002 through March 2004 for various complaints. (R. at 120-31.) Coeburn complained of aches and pains, particularly in the lumbar spine. (R. at 123.) She also complained of arthritis pain. (R. at 120, 125.) In February 2003, Coeburn complained of left knee pain. (R. at 126.) Examination showed no swelling or fluid and she had normal range of motion. (R. at 126.) In July 2003, Coeburn reported feeling better. (R. at 124.) In

January 2004, Coeburn reported feeling nervous at times. (R. at 121.) Dr. Varandani reported that Coeburn's lungs were clear. (R. at 121.) In February 2004, Coeburn complained of arthritis pain. (R. at 120.) Neurological examination showed intact mild left sacroiliac joint tenderness. (R. at 120.) In March 2004, Coeburn reported no change concerning her arthritis pain. (R. at 120.) Examination revealed a few occasional rhonchi. (R. at 120.)

On February 17, 2004, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Coeburn. (R. at 113-18.) Coeburn reported that she did not develop problems with her "nerves" until she began being physically abused by her first husband. (R. at 115.) Lanthorn reported that Coeburn showed no signs of psychotic processes and no evidence of delusional thinking. (R. at 116.) She was able to concentrate and to persist to task reasonably well. (R. at 116.) Her affect was slightly flat, but, overall, her mood was euthymic. (R. at 116.) Coeburn was able to ambulate without problem or difficulty with movement. (R. at 116.) She showed no signs of tremulousness in her hands. (R. at 116.) Coeburn reported that she did not like being in crowds. (R. at 116.) She reported that her medication was helpful and denied difficulties with depression. (R. at 116.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Coeburn obtained a verbal IQ score of 72, a performance IQ score of 76 and a full-scale IQ score of 72. (R. at 116.) Lanthorn diagnosed physical abuse during the course of Coeburn's first marriage by self-report and borderline intellectual functioning. (R. at 117.) He indicated that Coeburn had a then-current Global Assessment of Functioning, ("GAF"), score of 65.[2] (R. at 117.)

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32

Lanthorn reported that Coeburn was "judged to have, at worse, only mild limitations in her overall adaptability skills." (R. at 118.)

On March 3, 2004, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated that Coeburn had moderate limitations in her ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in the work setting and to set realistic goals or to make plans independently of others. (R. at 144-46.) Hamilton found that Coeburn was not significantly limited in all other areas. (R. at 144-45.) Hamilton reported that Coeburn was limited to simple, unskilled competitive work based on her borderline intellectual functioning. (R. at 146.) She also reported that Coeburn would be expected to have some mild to moderate limitations in social interaction in the work place. (R. at 146.) This assessment was affirmed by R. J. Milan Jr., Ph.D., another state agency psychologist, on May 4, 2004. (R. at 146.)

Hamilton also completed a PRTF indicating that a residual functional capacity assessment was necessary based on mental retardation. (R. at 148-62.) Hamilton indicated that Coeburn was mildly limited in her ability to perform activities of daily living. (R. at 158.) She indicated that Coeburn was moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R.

---

(American Psychiatric Association 1994). A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

at 158.) Hamilton indicated that Coeburn had not experienced any episodes of decompensation. (R. at 158.)

On May 3, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Coeburn had the residual functional capacity to perform medium work. (R. at 136-43.) He indicated that she could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 138.) He found no manipulative, visual, communicative or environmental limitations. (R. at 139-40.)

On October 1, 2004, Dr. Kevin Blackwell, D.O., examined Coeburn. (R. at 163-66.) Coeburn complained of hip, knee and back pain. (R. at 163.) Dr. Blackwell reported that Coeburn was in no acute distress. (R. at 164.) She was alert, cooperative and oriented with good mental status. (R. at 164.) Her gait was symmetrical and balanced. (R. at 165.) She had no swelling or tenderness in her back. (R. at 165.) Her upper and lower extremities were normal. (R. at 165.) Coeburn was tender in her hips and knees with palpation, but no obvious deformity, swelling or redness was noted. (R. at 165.) Straight leg raising was normal. (R. at 165.) Dr. Blackwell diagnosed hip and knee arthritis, by history, hypertension, by history, controlled and hyperlipidemia, by history. (R. at 165.) Dr. Blackwell completed an assessment indicating that Coeburn could occasionally lift and carry objects weighing up to 50 pounds, and frequently lift and carry objections weighing up to 25 pounds. (R. at 167.) He reported that Coeburn's ability to stand, walk and sit were not affected. (R. at 167-68.) He reported that Coeburn could occasionally climb, stoop, kneel, balance and crouch, but never crawl. (R. at 168.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2005); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 22, 2005, the ALJ denied Coeburn's claim. (R. at 11-19.) The ALJ found that the medical evidence established that Coeburn suffered from a severe impairment, namely arthritis, but he found that Coeburn did not have an

impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 18.) The ALJ found that Coeburn retained the residual functional capacity to perform medium work that required only occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 18.) Based on Coeburn's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Coeburn could perform jobs existing in significant numbers in the national economy. (R. at 18.) Thus, the ALJ found that Coeburn was not disabled under the Act and was not eligible for benefits. (R. at 18-19.) *See* 20 C.F.R. § 416.920(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the

regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Coeburn argues that the ALJ erred in rejecting Lanthorn's diagnosis of borderline intellectual functioning and by substituting his own opinion. (Brief In Support Of Motion For Summary Judgment,[3] ("Plaintiff's Brief"), at 5-7.) Coeburn next argues that the ALJ erred by inaccurately reflecting her nonexertional limitations in his hypothetical question to the vocational expert. (Plaintiff's Brief at 5, 7.) She also argues that the ALJ erred in finding that she was not a credible witness. (Plaintiff's Brief at 5, 7-8.) Lastly, Coeburn argues that the ALJ erred by failing to consider her complaints of pain and to develop the record adequately with regard to the adverse effect of her pain medication. (Plaintiff's Brief at 5, 8.)

The ALJ in this case found that Coeburn did not suffer from a severe mental impairment. (R. at 16.) Based on my review of the record, I find that substantial evidence exists to support this finding. In February 2004, Lanthorn evaluated Coeburn and found that she suffered from only mild limitations in her overall adaptability skills. (R. at 118.) He reported that Coeburn's overall level of functioning was only mildly limited and that she manifested no particular signs of anxiety while taking prescribed medication for her symptoms. (R. at 118.) Lanthorn made these findings despite having reported that he considered Coeburn to be in the borderline range of intellectual functioning. (R. at 117-18.) The record shows that Coeburn completed

---

[3]Coeburn did not file a motion for summary judgment in this case.

-10-

high school in regular classes. (R. at 58, 181.) She testified that she went grocery shopping and took care of the bills. (R. at 186.) She testified that she did not do math, but used a calculator when calculating her bills. (R. at 189.) While the record shows that the state agency psychologist imposed moderate limitations on Coeburn's work-related abilities, the ALJ rejected this assessment because it was based on Coeburn's IQ scores. (R. at 16, 144-46.) The ALJ gave greater weight to the opinion of Lanthorn in finding that Coeburn did not suffer from a severe mental impairment. (R. at 16.) Based on my review of the evidence, I find that substantial evidence supports the ALJ's decision not to give controlling weight to the state agency psychologist's assessment.

Coeburn further argues that the ALJ did not properly consider her allegations of pain. (Plaintiff's Brief at 5, 8.) Based on my review of the ALJ's decision, however, I find that the ALJ considered Coeburn's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

>Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Coeburn's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 16.) While Coeburn complained of back and knee pain, Dr. Varandani reported that neurological examinations consistently revealed intact results. (R. at 120, 125, 129.) The record is void of evidence of spinal stenosis, degenerative disc disease, nerve root compression, muscle weakness, sensory or reflex loss and positive straight leg raising testing. Furthermore, the evidence fails to show that Coeburn's impairments result in the inability to perform fine and gross movements or to ambulate effectively. Based on this, I find that the ALJ considered Coeburn's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Coeburn's allegations of disabling pain were not totally credible.

Regarding Coeburn's allegations that the ALJ failed to adequately develop the record with regard to the effects of her pain medication on her work-related abilities, I note that Coeburn, who was examined by her counsel, did not testify to any problems caused by her medication. Furthermore, Dr. Varandani's notes from March 2002 to

March 2004, (R. at 120-31), make no mention of any adverse side effects of her medication.

I also find that substantial evidence exists to support the ALJ's finding that Coeburn retained the residual functional capacity to perform medium work that required only occasional climbing, balancing, stooping, kneeling, crouching and crawling. This finding is supported by the assessments of Dr. Surrusco and Dr. Blackwell. (R. at 136-43, 167-69.)

For these reasons, I find that substantial evidence exists to support the ALJ's finding that Coeburn was not disabled.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Coeburn did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the ALJ's finding with regard to Coeburn's residual functional capacity; and

3. Substantial evidence exists to support the ALJ's finding that Coeburn was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:   This 30th day of December 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE